PLATT *vs.* STEWART.

An assessment by a municipal corporation, for laying curb and gutter stones, which is required by law to be certified by the assessors to the common council, but which is not signed by the assessors, is not valid in law.

An assessment in such case, upon the " estate of G. S.," instead of being upon the owner or occupant, by name, is not valid.

THIS was an action of ejectment brought by the plaintiff to recover the possession of two lots of ground situate on the easterly side of the eighth avenue, between Fortieth and Forty-first-streets, in the city of New-York, and came on to be tried before his Honor Justice OAKLEY, on the 22d of February, 1844.    On the trial the counsel for the defendant admitted that the defendant was in possession of the premises in question, at the time of the commencement of this suit.    The counsel for the plaintiff then read in evidence a lease from the mayor, aldermen and commonalty of the city of New-York, to the plaintiff, bearing date the 25th day of June, 1842, which lease recited an assessment for regulating and setting curb and gutter stones in the eighth avenue, upon the premises therein described, of $127,22, that the said sum of money had not been collected, and that the collector duly appointed to collect the same had made such affidavits in relation thereto, as are required by law, and also that the mayor, aldermen and commonalty of the city of New-York did, agreeably to the provisions of the acts for the collection of assessments, passed April 12, 1816, and May 14, 1840, take order for the advertising of said property to be sold, and caused the advertisements required by law to be published as required by law, and that the owner of said lots neglected to pay the said assessment, &c. and that the mayor, aldermen and commonalty aforesaid, on the said 25th day of June, 1840, caused the said lots to be sold at public auction, to George W. Platt, for the term of 400 years; and which lease also recited that the said mayor, aldermen and commonalty did, at least six months

Platt *v.* Stewart.

before the expiration of two years from said sale, cause an advertisement to be published at least twice in each week, for six weeks successively, in one daily newspaper, printed and published in the city of New-York, in such form as they deemed best calculated to give notice of such sale, that unless the lot should be redeemed by a certain day, it would be conveyed to the purchaser; and said lease further recited, that neither the person claiming title to said lots, nor any one on his or her behalf, within two years from the date of said sale, did pay to the street commissioner the said sum or any part thereof; and that thereupon the said mayor, &c. demised the premises therein described as lot No. 136 on the assessment map, to the said plaintiff, for the said term of 400 years, which lease was duly recorded in the office of the register. The counsel for the plaintiff also produced another lease, from the mayor, aldermen and commonalty of the city of New-York, containing the same recitals, and demising to the plaintiff in consideration of his advancing the amount of such assessment, and the expenses of such sale, the lot of ground therein described, as lot 137 on the assessment map, for the term of 400 years, which lease was recorded in the office of the register.

The counsel for the plaintiff next offered to read in evidence a resolution in favor of setting curb and gutter stones in that part of the eighth avenue, in front of the premises in question, offered in the board of aldermen July 18th, 1836, a reference of said resolution to the street committee, the report of the street committee thereon, and a resolution reported by said committee in favor of such work, adopted by the board of aldermen, October 3d, 1836, and a reference of the same in the board of assistant aldermen to the street committee of that board on the 17th of October, 1836, and a report of the street committee last mentioned, dated the 14th November, 1836, and a resolution of the board of assistant aldermen, adopted the same day, and an approval of the said resolution by his honor the mayor on the 16th day of November, 1836. The counsel for the defendant objected to the reading of the papers so offered, on various grounds, but the judge overruled the objections and received the evidence.

Platt *v.* Stewart.

The counsel for the plaintiff also offered to read in evidence an ordinance purporting to have been adopted by the mayor, aldermen and commonalty of the city of New-York, in common council convened, and to have passed the board of assistant aldermen, November 20th, 1836; and the board of aldermen, December 7th, 1836; and to have been approved by the mayor, December 10th, 1836. The defendant's counsel objected to reading said paper in evidence; but the court received the same in evidence. It was as follows:

" Be it ordered by the mayor, aldermen and commonalty of the city of New-York in common council convened, this 10th day of December, 1836, that the eighth avenue between Twenty-fourth and Forty-second streets be regulated, and the curb and gutter stones set therein, under such directions as shall be given by the street commissioner and one of the city surveyors. And be it further ordained, that John Ewen, jun., J. S. Warner and M. D. L. Gaines be, and they are hereby appointed to make an estimate of the expense of conforming to the provisions of this ordinance, to make a just and equitable assessment thereof among the owners and occupants of all the houses and lots intended to be benefited thereby as nearly as may be to the advantages which each may be deemed to acquire."

(Indorsed) Passed by the board of assistants, Nov. 28th, 1836. Passed the Board of aldermen, Dec. 7th, 1836. Approved by mayor, Dec. 10th, 1836.

" The following papers were received from the board of assistants, which were read as follows, viz.—Also, the following ordinances, which were concurred in, and ordered to be sent to his honor the mayor for his approval, viz. : For regulating and setting curb and gutter stones in eighth avenue from 24th to 42d streets."

" Nov. 28th, 1836. Adopted report for regulating curb and gutter in eighth avenue from 24th to 42d streets."

The counsel for the plaintiff then produced and read in evidence the oath of the assessors named in said ordinance.

He next produced and offered in evidence a paper called an assessment roll, without any date or the signature of any person

being attached ; to the reading of which the counsel for the defendant objected, on the ground that the said roll was not certified by the assessors named in said ordinance. Nor did it appear from the paper so offered that the persons so appointed as assessors had ever had any connection with it, or part in its preparation. That by the paper so offered it appeared that the lots in question were assessed as belonging to the " estate of Garrison Stewart," whereas to entitle any assessment to be read in evidence to affect the title thereto, such assessment should be made to the person or persons owning the same, at the time. His honor the judge overruled said objections, and to his decision thereon the counsel for the defendant excepted. The counsel for the plaintiff then read in evidence the heading of said roll, and of the several columns therein, and so much thereof as related to the lots in question. The second column, following the numbers of the lots assessed, was headed, " Names of owners, lessees, or occupants, easterly side." This column contained these words, opposite the numbers of the lots in question : " Est. Garrison Stewart." The assessment roll was not subscribed by any one. The counsel for the plaintiff next offered to read resolutions confirming said assessments, and appointing John L. Sharp collector thereof, passed by the board of assistant aldermen, Dec. 24, 1838, and by the board of aldermen, Dec. 17, 1838, and approved by the mayor, Dec. 28, 1838. The counsel for the defendant objected to the reading of the resolution, on the ground that the same was not signed by the presiding officer of either board, nor by the mayor ; that the indorsements thereon were no legal authentication thereof; that the said resolution appeared to have been passed by the board of aldermen and assistant aldermen, meeting separately, and without the presence of the mayor or recorder. That it involved the taxing or assessing of citizens of said city, and it did not appear that the said resolution was published or any order taken for the publication thereof, or that the ayes or noes were called upon the passage thereof by the minutes of proceedings of said boards, or either of them. His honor the judge overruled the said objections, and the counsel for the defendant excepted to his decision.

The said resolution was then read in evidence in the words and figures following, viz.: Assessments confirmed, and John L. Sharp appointed collector, by the board of aldermen, Dec. 17th, 1838, by the board of assistants, Dec. 24th, 1838. Approved by mayor, Dec. 28th, 1838. Thos. Bolton, clerk. The committee on assessments, to whom was referred the assessment list for regulating the eighth avenue, from 24th to 42d, and for setting curb and gutter stones therein, together with objections thereto, presented the following report in favor of confirming the same, (report states objections and that they were without foundation.) The committee therefore recommend that the assessment be confirmed, which was adopted, and directed to be sent to the board of assistants for concurrence.

"Adopted papers from the board of aldermen, Dec. 17. Assessments for regulating and setting curb and gutter stones in eighth avenue from 24th to 42d street, together with a report of the assessment committee of the board of aldermen, in favor of confirming same, on motion of Mr. Tieman, chairman of the committee of this board, the confirmation was concurred in." David T. Valentine, a witness for plaintiff, being sworn, testified that he was assistant clerk of the common council in 1836, and from thence to the present time; that the resolutions, ordinances and minutes of proceedings produced by the counsel for the plaintiff, were original records of the said corporation. Being shown the ordinances above given in evidence, he testified that the indorsement of the passage thereof in the board of aldermen was in his hand-writing, and that John Newhouse was at that time clerk of the board of assistant aldermen, and the indorsement thereon purporting to be made by him was in his hand-writing. These ordinances came enclosed from the street commissioner, and passed by reading the indorsements; the ordinances were not read at length. Witness had no recollection of that ordinance having passed the board of aldermen, except from his indorsement. That the ayes and noes were not called upon the passage thereof, or of ordinary resolutions. The board of aldermen and the board of assistant aldermen meet in separate chambers, and the recorder was not present, nor a member

of either board. That the assessment roll produced was the original assessment for regulating and setting curb and gutter stones in the eighth avenue, and the indorsements thereon state the time of its confirmation. That John L. Sharp, who was appointed collector of said assessment, was not the ward collector elected by the people : he was a collector of assessments appointed by the common council.

The counsel for the plaintiff next offered to read in evidence the affidavit of said collector, of demand of payment of said assessment of the owner of said lots, pursuant to statute. The counsel for the defendant objected to the competency and sufficiency of said affidavits to prove the demand of payment of the assessment, and that the collector should be called and sworn for that purpose. His honor the judge overruled the objection, and to his decision the counsel for the defendant excepted. The said affidavit, and so much of the schedule thereto annexed as related to the premises in question were then read in evidence. He swore in this affidavit that he had " demanded the moneys due on the said assessments of the several persons therein named, two several times of such owner or owners of the lands and tenements mentioned in the said assessment," and that they had neglected or refused to pay the sums of money assessed upon them respectively by the said assessments. Annexed to this affidavit was a schedule containing a list of the lots assessed, the names of the persons to whom assessed, and the amount of the assessment. Under the column headed " To whom assessed," were the words "Estate of Garrison Stewart," placed opposite the numbers of the lots in question.

The counsel for the plaintiff having rested his case, the counsel for the defendant moved for a nonsuit, upon the ground that the plaintiff had not produced in evidence a sufficient title to the premises in question to entitle him to recover against the defendant. His honor the judge overruled the motion, and the counsel for the defendant excepted to his decision.

The counsel for the defendant then opened the defence, and read in evidence a deed of conveyance for one of the lots in question, executed by Frederick Ryer to Garrison Stewart, bear-

ing date the 14th of December, 1831, and conveying said lots of ground in fee, which deed was duly recorded.   He also read in evidence a deed from Mirah Dikeman to Garrison Stewart, conveying to him the other lot in question in fee, bearing date the 21st day of March, 1829, and recorded.   The counsel for the defendant called Polly Colvill, who testified that she knew Garrison Stewart, the grantee in said deeds; that his wife was the daughter of witness; that her name is Mary, and she is defendant in this suit.   That Garrison Stewart was in possession of the lots in question when he died.   That he died on the 6th of October, 1834.   That he left surviving three children, the eldest named Ellen, was eight years old at the time of his death; the second was named Mary, and was three years old when he died; the third was named Ann, and was two months old at the death of Garrison Stewart.   That Mary Stewart had remained in possession of said premises ever since the death of Garrison Stewart.   The counsel for the defendant here rested the defence.

Whereupon the counsel for the plaintiff offered to read in evidence a resolution adopted by the board of aldermen and by the board of assistant aldermen, and approved by the mayor, directing advertisements and sale of lands for unpaid assessments, including the premises in question.   And the resolution, although objected to, was read accordingly.

The testimony in the cause being closed, the judge charged the jury that the assessment roll introduced in evidence by the plaintiff, was not such as was required by law, because it was not signed nor certified to, by the assessor named in the ordinance; to which charge the counsel for the plaintiff then and there in due form and time excepted.   That by the assessments the lots in question were assessed as belonging to the estate of "Garrison Stewart;" whereas to entitle any assessment to be read in evidence to affect the title to real estate, such assessment should be made against the person or persons owning the same, at the time of the assessment.   The judge further charged the jury, that for the reason above stated the defendant was entitled to a verdict.

Platt *v.* Stewart.

The jury thereupon, under the charge and instructions so given to them, found a verdict for the defendant.

*H. E. Davies*, for the plaintiff.

*J. Moncrief*, for the defendant.

*By the Court*, EDMONDS, P. J. I agree with the court below in both the positions assumed in its charge to the jury.

1. The assessment roll was not such as was required by law. The statute requires that it should be certified by the assessors to the common council. There is no evidence in the case that it ever was so certified, nor any that the assessment confirmed by the common council, was the act of the assessors. It wanted every evidence of authenticity. For aught that appears, the assessment which they did confirm, may have been made by persons having no authority, nor acting pursuant to law or under the solemnity of an oath, as required by the statute. The common council had no authority to confirm any assessment, unless duly certified to them; and it would never do to sanction them in imposing upon owners of property an assessment which may have been made by private parties, to advance their own ends, when they are warranted only in confirming such as are made by public officers duly authorized and duly sworn.

It was suggested on the argument that the original assessment roll is duly signed and certified by the assessors. In answer to this, it is sufficient to say, that that fact was not proved on the trial; but on the other hand, it was then assumed that it had not been signed; and it was upon that assumption, that the court below made its decision against the validity of the paper. It is too late now to insist that the fact was otherwise. The trial below was the fitting occasion for such an averment

2. The assessment upon the "estate of Garrison Stewart," was also illegal. The statute requires the assessment to be upon "the owners or occupants of the houses and lots intended to be benefited." And for such an improvement as laying curb

and gutter stones, there is no authority for making any other assessment. In assessments for opening streets there is a different provision. There, if the owners or parties interested, or their respective estates and interests, are unknown or not fully known, it will be sufficient for the report to set forth generally the sums assessed and the parties interested, without specifying the names or the estates or interests of the owners or parties interested, or any of them. But I repeat, that in assessments for paving, there is no such provision. On the other hand, the statute is express in requiring the assessment to be upon the "owner or occupant;" and I know of no authority that the common council or their assessors have, to depart from this plain requirement of the statute.

The departure in this case is very palpable. Although the assessment may be against either owner or occupant, the common council can not have recourse for the collection of the assessment, to a sale of the premises in the manner in which these premises were sold, unless payment of the amount be first demanded of the owner, (not the occupant,) or unless such owner can not on diligent inquiry be found in the city. Now this assessment is not returned as one where the owner can not be found in the city, but is returned as one where the collector had demanded it of the owner of the land mentioned in the assessment. What owner, in this case, was the demand made upon? The only owner mentioned in the assessment was the "estate of Garrison Stewart." Which part of his estate—the real or personal—and of what persons? Of the widow, as the occupant and tenant in dower? Of the children, as heirs at law? Or, of the personal representatives of the deceased? All this is left in doubt in this case, and may properly be so left, if this mode of assessment can be tolerated. And then of what use would be the enactment which requires two demands of the *owner*, before recourse can be had to the remedy by sale of the premises sought to be charged.

But it is unnecessary to pursue the argument. It is enough in such cases that the statute must be strictly followed in order

to warrant the imposition of such a tax, and that in this case there has been a departure from it.

The charge to the jury, in part, was that the defendant below was entitled to the verdict; and to that there was an exception. On the argument it was suggested that under the act of 1824, the common council had a right to make the improvement before collecting the money, although it has been ruled otherwise by this court under the act of 1813.

It is unnecessary to pass upon this point. The other considerations on which I have dwelt, are of themselves decisive of the case, and the judgment must be affirmed.

Judgment affirmed.

