PEOPLE *ex rel.* OSBORN *v.* GILON *et al.*, Assessors.

(*Supreme Court, General Term, First Department.* March 14, 1890.)

1. CERTIORARI—TO BOARD OF ASSESSORS—MANDAMUS.
    *Certiorari,* not *mandamus,* is the proper mode of reviewing the decision of the board of assessors.

2. STREET ASSESSMENT—LIABILITY OF PURCHASERS.
    Where property is purchased after the making of a street improvement, but before the assessment is made, the purchaser, if he desires to protect himself from the lien of the assessment, must provide therefor in his deed or contract.

An application by William H. Osborn for a *mandamus* to compel the board of assessors to change the name on the assessment list of the owner of a certain lot assessed for regulating Westchester avenue. The court below made an order denying the application. The relator has appealed. The material dates, as appears by the papers, are as follows: The contract for the work was dated November 26, 1884, pursuant to an ordinance previously adopted. The work of regulating, etc., the avenue, was completed on or before April 1, 1887. The prepared list was received by the assessors August 15, 1887. The interest certificate was transmitted December 1, 1887. The list was advertised for objections three times, to-wit, June 1, 1889; July 30, 1889; September 18, 1889. The motion papers for this *mandamus* were served October 28, 1889. The list was completed by the assessors, and sent to the board of revision, October 31, 1889. The ownership of the property is as follows: Philip Lambert died, and devised the property to Margaretta Diehl and another, his children, in 1878. Margaretta Diehl and another, as heirs and devisees of Philip Lambert, deceased, conveyed to Hecht, October 12, 1887. Hecht conveyed to Osborn, the relator, March 30, 1888. Osborn is still the owner. On or about October 31, 1889, the assessors finished the list, and assessed as follows: "Block No. 1674, ward No. 16; owner, William H. Osborn; amount, $306.36." This application is on the part of Mr. Osborn for a *mandamus* to compel the board of assessors to strike out his name, an l

substitute that of Margaretta Diehl and others, as heirs of Philip Lambert, deceased. It will be observed that the assessors have assessed as owner the person who, confessedly, was the owner when they completed the list, and had been such owner for about 18 months previously. The relator, however, insists that the names of persons previously the owners should be substituted in place of his own name, and the assessment list thus be made to set forth what the respondent insists is not the fact.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Tulman H. Baldwin,* for appellant. *W. H. Clark,* (*G. H. Sterling,* of counsel,) for respondent.

BRADY, J. The opinion of Justice LAWRENCE, which is as follows, covers the disputed points. He said:

"Conceding all that the relator states in his moving papers to be true, this is not a proper case, in my opinion, for granting the *mandamus* which is asked for. The court will not by *mandamus* direct a *quasi* judicial tribunal what to do. It can only set the board of assessors in motion where it has refused to act. *People* v. *Common Council,* 78 N. Y. 37, and cases cited by RAPALLO, J. Here the board of assessors has acted, and has rendered its judgment upon the question referred to in the relator's affidavits. If the decision of the board of assessors was wrong, *mandamus* is not the proper remedy for obtaining a review of its decision. Such a review may be obtained on a writ of *certiorari.* Besides, it appears from the affidavits that the relator became the owner of the property on the 30th of March, 1888,—after the improvement had been made, but before the assessment had been laid. The assessment list was not completed until October 31, 1889. It was the duty of the relator, if he desired to protect himself against the incumbrance or lien of the assessment, to have provided therefor in his deed or contract of sale. It was held by the court of appeals in *Lathers* v. *Keogh,* 109 N. Y. 583, 17 N. E. Rep. 131, that until the amount of a tax is ascertained in the manner prescribed by law no lien or incumbrance exists by reason thereof. In that case the parties entered into a contract for the purchase and sale of certain real estate in this city, the conveyance to be made August 23, 1883, by warranty deed, 'free and clear of all incumbrances' except certain specified mortgages. Prior to the making of the contract an assessment of the property for the tax for the year 1883 had been made, but the calculation of the tax was not made until thereafter, and the tax was not confirmed until August 29th, which, upon the defendant's refusal, the plaintiff was compelled to pay. In an action to recover the amount so paid, it was held that the tax was not a charge or incumbrance upon the property which the defendant was bound to pay under the covenant in his deed. In the case at bar, I have nothing before me which shows what the covenants were which were contained in the deed to the relator from the heirs and devisees of Philip Lambert. Even if it was a full covenant warranty deed, the case just cited shows that, as between the grantor and grantees, the former could not have been compelled to pay an assessment which was not completed until eighteen months after the conveyance took effect.

"That the assessors were right in stating the name of the relator as the owner of the property at the time of making the assessment is not only apparent from the conceded facts of the case, but he also appeared so to be from the tax-books. See *Paillet* v. *Youngs,* 4 Sandf. 50. Section 871 of the consolidation act is only a re-enactment of the Laws of 1813 as modified by chapter 326 of the Laws of 1840, which acts were considered in that case. See, also, *In re Tappan,* 54 Barb. 227, and *Haight* v. *Mayor, etc.,* 99 N. Y. 283, 1 N. E. Rep. 883. For these reasons, this motion will be denied, with costs."

To the cases cited by the learned judge must be added that of *Harper* v. *Dowdney,* 113 N. Y. 644, 21 N. E. Rep. 63, in which *Lathers* v. *Keogh* was

reaffirmed. The relator, as suggested by Justice LAWRENCE, did not protect himself by a proper agreement, and now seeks, upon what may be regarded as equitable principles, to relieve himself from the burdens which his omission in that regard impose upon him. His legal obligations are, however, so declared by the court of last resort that he has no remedy except by a change in the rules laid down; for the reason that there is nothing presented for our consideration here which takes this case out of the purview of those cited. The application fails, therefore, in form and substance. For these reasons, the order appealed from should be affirmed, with $10 costs and disbursements of this appeal. All concur.